J-S17019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHIVON FORD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AHF MONTGOMERY, INC. D/B/A | : | No. 2880 EDA 2023 |
| CHELTENHAM NURSING AND | : | |
| REHABILITATION CENTER | : | |
| | : | |
| | : | |

Appeal from the Order Entered October 5, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  220802254

BEFORE:  BOWES, J., KING, J., and BENDER, P.J.E.

DISSENTING MEMORANDUM BY KING, J.:        **FILED DECEMBER 18, 2024**

I respectfully depart from the Majority's conclusion that there is a genuine issue of material fact in this case to preclude the entry of summary judgment.  As such, I would affirm the trial court's award of summary judgment in favor of Appellee.

As the Majority correctly states, "Appellant bore the burden of proving, *inter alia*, that Appellee knew or should have known of a roof defect at the nursing facility that caused water to leak into her room."  (Majority at 3-4).

Here, when asked about Appellee's roof maintenance procedures, Joseph Novosat stated the following during his deposition:

>   Q.      Is there any sort of a routine inspection that
>           [Appellee] does for leaks?

A.       We do preventive maintenance on the roofs.  We have a system called TELS, it's a preventive maintenance program.  It gives us a guideline of what we should be checking and it's done daily, weekly, and monthly.  It's a guideline of what to go over, for example, floors, or water temps in rooms, things like that.  It's a paid program that we use through a local vendor.

Q.       So, this is a software program?

A.       Yes.

*      *      *

Q:       And within this TELS program, is there some sort of information in there about performing routine inspection of roofs and ceilings and floor for leaks?

A.       Roof checks.

**Q.       What does it say about roof checks?**

**A.       To see drains, make sure they aren't blocked. See if there is puddling, check for cracks, you know, things like that, that's a monthly.**

**Q.       You do that every month?**

**A.       Yes.**

Q.       Does it come up on the system to do the check?

A.       No, it's automatically every month that it comes up.

(N.T. Deposition of Joseph Novosat, 7/12/23, at 21-22) (emphasis added).

Mr. Novosat further stated that if any issues are detected during these roof checks, the maintenance staff takes action to fix the condition.  He testified that he does not keep a record of the findings of each inspection but conducts

them regularly every month.

To me, the record shows no genuine issue of material fact as to whether Appellee knew or should have known of a defect in the roof. Mr. Novosat stated that monthly roof inspections were done to maintain the roof and address any defects in a timely manner. Mr. Novosat also stated that he takes action to fix any defects uncovered during the inspection. Appellee further produced the TELS work history document showing that monthly inspections were regularly conducted in 2020, and one such inspection was performed on September 4, 2020, only a few weeks before Appellant's fall. (**See** Reply Brief in Support of Motion for Summary Judgment, filed 10/3/23, at Exhibit A).

The Majority concludes that the TELS work history document does not sufficiently establish that Appellee regularly conducted roof maintenance procedures because Mr. Novosat did not specify during his deposition whether he physically marks tasks as completed in the TELS system, or whether the tasks are marked as completed automatically by the software program. As such, the Majority holds that there is a question of fact as to whether the TELS software prompts staff to complete a roof check every month, requiring the maintenance staff to enter that the check has been completed into the system, or whether the program automatically records that roof checks were completed every month without intervention from staff.

Nevertheless, the TELS document speaks for itself on this issue. The document is titled "Work History Report" for the category "Roof." It has one

column titled "Due Date," another column titled "Task Description," and another column titled "Task Completion." (*Id.*). The task description for every entry on the document is "Roof: Regular maintenance and safety inspection." (*Id.*). Under the "Due Date" column, the roof inspections are consistently due on the last day of each month, indicating that the system prompts staff to complete a roof check automatically every month. (*Id.*). In the "Task Completion" column, all entries except for one state "Marked done on-time by Joseph Novosat on…" followed by the date of completion for each month. (*Id.*) The document clearly states that the task is marked as completed by Mr. Novosat.

Additionally, there is no consistency or pattern to the date of completion marked for each month, indicating that it is not automatically entered by the TELS system. For example, the roof inspection that was due on 9/30/2020 was marked completed on 9/4/2020. (*Id.*) The roof inspection that was due on 10/31/2020 was marked completed on 10/30/2020. (*Id.*). For the roof inspection that was due on 4/30/2020, the "Task Completion" column merely states "No action recorded." (*Id.*). Viewing the document in its full context, I disagree with the Majority that "we can only speculate as to whether [Mr. Novosat] meant that the system automatically reminded him to do the check, or it systematically marked it as completed." (Majority at 6). Consequently, I cannot agree with the Majority's position that "the trial court improperly resolved a genuine issue of material fact in favor of the moving party by

making a factual finding that Mr. Novosat performed monthly routine checks and that those efforts evidence that Appellee had satisfied its duty of care to Appellant." (*Id.* at 7). Rather, my review of the TELS report confirms that a roof inspection was completed on 9/4/2020, just a few weeks before Appellant's fall.

In my opinion, Appellant failed to produce any evidence to demonstrate that Appellee's roof maintenance procedures were insufficient or that Appellee knew or should have known of a defect on the roof that it failed to remedy. Instead, Appellant merely speculates that Appellee may have or somehow could have discovered unknown defects on the roof that were not addressed prior to Appellant's fall. On this record, I agree with the trial court that Appellant failed to produce evidence that Appellee had actual or constructive notice of the puddle in Appellant's room or any defects in the roof that resulted in the puddle. *See, e.g., Estate of Swift v. Northeastern Hosp. of Philadelphia*, 690 A.2d 719 (Pa.Super. 1997), *appeal denied*, 549 Pa. 716, 701 A.2d 577 (1997) (affirming summary judgment in favor of appellee on appellant's negligence claim where appellant slipped and fell due to water on floor at hospital; holding appellant failed to establish that appellee had notice of hazardous condition where no evidence was presented of how water came to be on floor, how long water was on floor, or that appellee failed to properly monitor or maintain area). Thus, I would hold that the court properly granted Appellee's motion for summary judgment. Accordingly, I dissent.